IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

**UNITED STATES OF AMERICA**

**vs.**

**BHAGAVAN MAHAMAYAVI ANTLE,**
**a/k/a KEVIN ANTLE,**
**a/k/a DOC ANTLE,**

Criminal No: 4:22-cr-00580-JD

**<u>GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM</u>**

The Government hereby submits this response to the Defendant's sentencing memorandum and motion for a downward variance, which was filed under seal on or about June 25, 2025. *See* ECF No. 342.[1] At the outset, the Government does not believe a downward variance to a non-custodial sentence is appropriate and would refer the Court to its sentencing memorandum[2] for the reasons why the Government believes a custodial sentence is warranted pursuant to § 3553(a). For the purposes of this response, the Government is addressing the Defendant's arguments in his sentencing memorandum on the value of the chimpanzees.

**I. Value of the Chimpanzees.**

Antle's objection focuses on the market value of each of the chimpanzees that he purchased for $200,000. Antle first states that the value should come from collateral forfeiture tables. Antle then argues that the value could, or should, be zero due to the non-monetary donation of a chimpanzee in 2024. Both arguments are misleading in that they ignore and omit critical facts.

[redacted]

[redacted]

As such, the Government would, respectfully, ask this Court to find that the USPO correctly determined the value of each chimpanzee was $200,000

A. Use of Collateral Forfeiture Tables.

As discussed in the Government's sentencing memorandum, the collateral forfeiture tables do not represent a "value." The tables provide a summary fine amount. The Defendant repeatedly calls the tables "valuation tables" and references the *Tree Top* case; however, the Defendant but fails to mention that in the *Tree Top* case the judge found that the tables were *not* valuation tables. A relevant excerpt from the transcript is below:

> THE COURT: And to be clear, the Court wasn't quite altogether sure what it was referring to. The Court was referring to an excerpt in united States versus Bertucci, the Eighth Circuit case that has been cited to the Court, where the Eighth Circuit writes, "The united States Fish and Wildlife Service has prepared a Fish, Wildlife, and Plant Valuation Table, 'Valuation Table,' that identifies the 'replacement value' of eagles as $2,500, and the 'replacement value of hawks as $350 . That 's what the Court was referring to. I'm not quite sure exactly within U.S. Fish and Wildlife Service, well, internal lingo whether the Eighth Circuit got that right or not.
>
> MS. DILGES: And, Your Honor, to follow up with that from Agent Merrill.
>
> Q (BY MS. DILGES) It then cites a footnote that you and I have discussed in the past where it lists general orders from various districts across the country?
>
> A Yes.
>
> Q And those general orders that are listed in the footnote that the Eighth Circuit is referring to as the Valuation Table are the actual Collateral Bond Schedules from those various districts?
>
> A Yes. I do now know exactly what we're talking about.
>
> THE COURT: Okay. And it's called the Collateral Bond Schedule?
>
> Q (BY MS. DILGES) I think -- Agent Merrill, it's referred -- generally referred to as that, but some districts have it maybe worded a bit differently?
>
> THE COURT: How does the U.S. Fish and Wildlife Service refer to it?
>
> THE WITNESS: Your Honor, we refer to it as the "Collateral Schedule."
>
> THE COURT: Okay.

From that point on, the judge in *Tree Top* described the table as a "table of fines." In referring to the table as a "table of fines," the *Tree Top* judge did acknowledge that it had to consider *Bertucci*, and then went on to rule "I find that the Hosterman report, the Abt report (the

Government expert's reports), corroborates a value of $5,000, as set forth in the -- you call it Bond Schedule. I believe that Special Agent Merrill called it the Collateral Schedule. And that 's what the Court -- the Court -would rely on both."

This is a far cry from what the Defendant has described as Federal Courts throughout the United States relying on valuation tables. It is a single court in the Eighth Circuit finding that objective research and facts, along with the need to respect binding precedent, came to the same valuation as the Collateral Schedule.

B. Shaylynn Kolwyck's Statements on the Value of Chimpanzees.

In his sentencing memorandum, when discussing value, the Defendant argues that the value could be $0. Defendant makes this argument by citing to statements Shaylynn Kolwycks made during a proffer regarding the donation of chimpanzees. The Defendant fails to provide this Court with crucial and critical context about the statements Shaylynn Kolwyck made. In her proffer, Shaylynn did state that she donated chimpanzee for $0; however, what she stated directly after that statement was the reason why she did this. Shaylynn Kolwyck explained in her proffer that after she was visited by U.S. Fish and Wildlife Service Special Agents in 2022 (when she was told that she was being investigated for the illegal sale of chimpanzees), she wanted to get rid of the chimpanzees and knew that she could not receive any money for doing so. Contrary to what the Defendant wants this Court to believe, the statement by Shaylynn does not indicate that a chimpanzee is worth zero dollars. To the contrary, it indicates that the subject of a federal investigation was not willing to continue to violate federal law after being put on notice that she was being investigated. Importantly, in the very same report, **Shaylynn stated that in 2020 and 2022, "the going rate for an infant chimpanzee was $200,000."**

As all parties have acknowledged, Sunshine Zoological was the only facility in the United States that would sell baby chimpanzees to private entities. In market terms, that is a limited supply. As Antle's texts show, he was not the only person trying to buy a baby chimpanzee. At one-point Antle was told he was the "third in line for the next baby." Defendant also did not state in his sentencing memorandum that Kolwyck stated in her proffer that Sunshine "did sometimes have buyers lined up before a female chimpanzee became pregnant." By the time of his illegal chimpanzee purchase in 2019, Antle had been aggressively trying to buy a chimpanzee for three years. Based on the uncontroverted evidence in this case, this Court has an excellent idea of the market before 2022—a very limited supply and a significant, competitive, demand. In a fair market, when there is limited supply and significant demand, the seller sets the sale price, which is exactly what the evidence here shows.



Antle's purchases of chimpanzees are the definition of a fair market at work, and the high market value is precisely what the laws of economics would predict.[4]

In relying on Shaylynn's proffer statement, Antle also mentions earlier chimpanzee transactions from 2008 and 2015 where there is no discussion on the price paid for the chimpanzees. Importantly, captive chimpanzees were not listed as endangered until September 14, 2015. Prior to that date, captive-bred chimpanzees could be sold across state lines without federal consequences. When chimpanzees were listed, it was specifically due to the impact that captive trade, particularly the high commercial value of captive chimpanzees, has on wild populations and poaching. The decision to list captive chimpanzees stated:

> "Congress specifically recognized "overutilization for commercial, recreational, scientific, or educational purposes" as a potential threat that contributes to the risk of extinction for many species. If captive chimpanzees have separate legal status under the Act . . . Poachers and smugglers would have increased incentive to remove animals from the wild and smuggle them into captive-holding facilities in the United States for captive propagation or subsequent commercial use, because once in captivity there would be no Act restrictions on use of the captive specimens or their offspring. . . .This could be a particularly lucrative trade for poachers and smugglers because many endangered and threatened species (particularly foreign species such as chimpanzees) can be at risk of extinction because of their high commercial value in trade (as trophies or pets, or for their furs, horns, ivory, shells, or medicinal or decorative use)."

80 FR 34500 (June 16, 2015), available at: https://www.federalregister.gov/d/2015-14232/p-39.

As it relates to determining the fair-market value, the Defendant's attempts to point the Court towards other transactions that have no bearing on the market during are time period the

[4] Anna Hausman, et al., *Exploring the Effects of Market Scarcity on Consumers' Demand for Rarity in the Wildlife Trade*, Glob. Ecology & Consv., Vol. 28 (Dec. 2023). Available at: https://www.sciencedirect.com/science/article/pii/S2351989423003797

chimpanzees at issue were purchased by Antle are a distraction. Between 2015, which is the date that interstate trade in captive chimpanzees became illegal, and on or about June 7, 2022, when USFWS Special Agents notified the only supplier of baby chimpanzees that they were being investigated for their illegal sales, the fair market value was $200,000, which is what Antle paid.

**II. CONCLUSION.**

The Court does not need to stretch beyond the clear facts of this case. Antle negotiated for and freely purchased three chimpanzees for $200,000 in a supply-limited market. The same value has been confirmed by three other knowledgeable parties. The profit potential of a baby chimpanzee easily eclipses $200,000 in a short period, and Antle used the animals to generate vast profits. All evidence and reliable sources here point towards a $200,000 value for Antle's chimpanzees. As such, the Government respectfully requests the Court to overrule the Defendants' objection to the PSR pertaining to the value of the chimpanzees and would further refer this Court to its sentencing memorandum for why, pursuant to an evaluation of § 3553(a), a custodial sentence is appropriate, sufficient, and not greater than necessary.

.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

RESPECTFULLY SUBMITTED,

BRYAN STIRLING
UNITED STATES ATTORNEY

By: /s/ *Amy Bower*
Amy F. Bower (Fed. Id. 11784)
Assistant U.S. Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina 29401
(843) 727-4381
Amy.Bower@usdoj.gov

ADAM R.F. GUSTAFSON
ACTING ASSISTANT ATTORNEY GENERAL
ENVIRONMENT AND NATURAL RESOURCES DIVISION

By: */s/ Patrick Duggan*
Patrick M. Duggan
Senior Trial Attorney
Environmental Crimes Section
U.S. Department of Justice
Tel.: (202) 305-0366
Patrick.Duggan@usdoj.gov

Charleston, South Carolina
July 7, 2025